And we move to the seventh case this morning, U.S. v. Johnson. Mr. Hillis. May it please the court, counsel. Again, my name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Michael Johnson. Mr. Johnson is raising a single issue on the appeal, but we need first to get to the prospect of an appeal waiver. There was an appeal waiver in the written plea agreement. The government drafted that written plea agreement. It presented it to my client, and as it well knew, Mr. Johnson was illiterate. He suffered from profound cognitive impairments that were the result of six months of continuous comatose state. So he was not a high-functioning individual, and he depended greatly on what the government's representations were. And at the change of plea, colloquy, the government specifically, and this is at Government Appendix A, page 38, informed the court that Mr. Johnson is, quote, reserving the right to appeal the substantive reasonableness of the term of imprisonment. That bound the government. Irrespective of what the plea agreement may have said contrarily about the right and the ability to preserve the challenge of substantive reasonableness on the appeal, Mr. Johnson, as I said, was impaired. He was induced by the government's representations to go forward onto the change of plea with the understanding that he could, in fact, preserve the right to challenge the substantive reasonableness and that it had been preserved. Irrespective of what the plea agreement said, the government, through its representative, the Assistant United States Attorney, bound the government in allowing my client to go forward on the substantive reasonableness challenge regardless of what the plea document said. You can amend things orally. Is it your position that that oral misstatement of the terms, the written terms of the plea agreement by the prosecutor at sentencing was a modification of the written agreement? Absolutely. I don't think it is a misstatement. It is a qualitatively different statement about what was represented in the written terms versus what was done through an oral modification. But wasn't there a recess taken after that statement because of some collateral issues and then you went over the entire pre-sentence with your client? I don't know if it was you. Somebody else in the district court went over the entire plea agreement again with your client and determined that he understood everything thoroughly and then everybody went back on the record and patched things up. He understood everything that includes what the representations were by the government. We don't have any record on that. We don't have any record that there was an understanding reached about a modification, an oral modification, no meeting of the minds on an oral modification. Only what was stated of record. There's nothing that comes in and says, Your Honor, we misspoke, he did not preserve this issue, we need to clarify that, and so forth. But the record reflects that the defense counsel went over the entire written agreement with the defendant during the recess that was taken after this misstatement. It wasn't a willful misrepresentation. There's no evidence of that, but it was a misstatement of the terms of the written agreement. And then when court resumed, a record was made that the defendant understood completely the terms of the written agreement. So there could not have been a meeting of the minds on an oral modification if that was the case. I'm not seeing anything. Is that not the chronology? Your Honor adequately states the chronology. It's just I think it assumes that there was a correction made, an understanding that was reached, some contrary discussion that incorporates somehow something between counsel and the defendant that the government misspoke, you haven't preserved this issue, and you can't go forward on this in the event of an appeal. That's not in the record. I think that what you've laid out adequately states the chronology in what was said, but I don't think it takes into account, at least for purposes of my advocacy on behalf of my client, what the government did to bind itself in this particular case. It did not undo that modification coming into court and saying to the extent, Your Honor, that we said something that was contrary and we said before that he's preserved this issue. He has not. We'd like to make that a record. Does defense counsel agree? I don't find anything in the record that shows the government did that. And these are important things. These are plea agreements, and in particular, a plea agreement with a disabled individual. Plea agreements come with due process requirements. The government's going to make representations and it's going to represent the government's interests. It has to live with the things that it says in the agreements that it makes, even if it is either a misstatement or something along those lines. My client is entitled to have the benefit of that, and he is asking for that now. I think that he deserves it, given the lack of completeness, I'd say, in the record to dispel what this error was by the government. Just curiously, given your error claim, then what? We have now the mountain to climb of the substantive unreasonableness sentence. Yeah. Substantively unreasonable sentence. This is just a step to give you an ability to climb that mountain, I guess. Yes, but it's important because if we are going to have the huge majority of cases be determined through plea agreements, and they can be written or oral, we have to, as a matter of due process, insist the government honors the terms that they make. That's fundamental, and we're upsetting that if we allow them to say one thing in a written agreement, something else during the change of plea colloquy, with the understanding that this now is a material change that allows him to preserve one thing that's difficult enough to win, and then to pull the rug out from under him in the appeal. They filed a motion to dismiss the appeal. They've now asserted waiver, which they can waive, incidentally, but they're insisting on it, and we think that they are bound by their party's representations in the court. When this misstatement was made, what was the reaction from your side? Well, I wasn't present. I'm sorry? I said from your side. Yes, sir. So my read on it is they were trying to keep the change of plea colloquy moving forward because everybody recognized that my client was just barely able to function and understand things. They had to recess in order to have a second go at the change of plea because he was so disabled. He didn't understand things. And so I think that they were trying to spoon-feed him the minimum terms so that there was a satisfactory Rule 11 colloquy for a valid plea, but in the process they interjected this additional factor, this ability to preserve the substantive unreasonableness challenge on the appeal. That's my take on it. Again, I can only read as much as Your Honors can on that. But I don't think that it's an unfair read. Once it was said, nobody said anything? I don't see anything in the record to say that somebody stood up and said, We misspoke. He hasn't preserved this. We see they go back to there's a written plea agreement, but they don't account for the oral modification. If I can, I will move to the next part, the mountain to climb, the substantively unreasonable sentence. The government says it's a groundbreaking claim, but the ground has been broken. The Second Circuit broke it in Dorby. It added to it in the Jenkins decision, which was April. It was a within guideline sentence on a child pornography case, the transport of child pornography across international borders from Canada to the United States, and in it they said a within guideline sentence that was very close to the low end of the range was substantively unreasonable. And I think that we should take a close examination of the factors that they thought were relevant for that because we have them here. And importantly, even under this Court's jurisprudence, in Rep King, we have the overemphasis on factors, sentencing factors. And when that happens, this Court has said, and we don't want to think of substantive unreasonable challenges as a one-way elevator that only if the sentence is too low, then there's relief. But this is a sentence that's too high, and relief should also be given when there is an overemphasis on a sentencing factor. The government recommended a 20-year sentence. My client got 30. And the judge took into account mechanistically specific deterrents, general deterrents, need to protect the public. My client is going to die in prison, more than likely. How old is he now? He was 39 at the time of the sentencing. He's 40 now, perhaps. Forty or so. What is his capacity? Is he in general population? As I understand it, he is. So he's able to get to lunch and do things like that. Yeah, he has minimal abilities, and he can do those things, but he's not a high-functioning individual. But anyway, back to the Repking decision. There's an overemphasis on these factors. There's a mechanistic application of them. There's a failure to take into account that this is going to be a life sentence. Pressley, Polk, those are relevant decisions from this Court pertinent to this issue. The judge should have taken this into consideration. Are any of those cases sex trafficking in minors cases? They're not. But they're also not fraud cases. The government says this is a fraud case. I've never seen one of these cases characterized as a fraud case. In particular, they characterized it. It's not the same attorney on the appeal as it is in the district court, but it was characterized as a crime of violence. I think they typically understood these trafficking offenses against children as crimes of violence. The Polk and the Pressley decisions do take into account statistics that deal with drug dealing and violent offenses. So I think this is squarely in that category. But 360 months has been handed down. We just did one for sex trafficking. Yes. According to the statistics, the Department of Justice and I think the Sentencing Commission as well as the Secretary of State, I think the typical sentence for offenses that are roughly in this group are a little over 11 years. My client's doing a 30. And the government recommended 20. So we have a huge disconnect, a great disparity in the judges' thinking. The average sentence for a sex trafficking case is 11 years? I believe so, Your Honor. When minors are involved? Over a period of three years? Forces used? I will have to go back and check the statistics. I don't know if they singled them out about the ages of the individuals, but I think that it's generally with sex trafficking. If I haven't cited it in this brief, which I thought I did, I can file a 28J letter with the court because I know I recently cited it in another case. Well, that's a problem, at least the way I see it. If this case singles itself out, this is pretty bad. And I realize these girls were nothing to write home about. Of course, they didn't have a home. But, you know, to go back and say we have to do it over, the only thing it seems he's got going for him, he isn't going to live long enough to serve this out. That's sad if he's going to spend the rest of his days in prison. A life sentence, whatever his malady and disability that you're talking about, takes his life earlier than normal. Maybe he's only got 10 years to live. Incarceration speeds the process. Okay, it probably would. And furthermore, Your Honor, if this case is a bad case, and it clearly is, these are not good facts, but is it different from the other cases where somebody gets the 11-year sentence? I don't know that it is. I'd have to see that 11-year procedure. I understand. And I'll happily support 22. No, we just had one recently called Maybe. Yes, there was another case that came out of the Southern District of Illinois, and there was a 30-year sentence in it. I thought it was Marcus Thompson was my recollection. Did you say Maybe? I thought Maybe involved the aloneness issue on the threats. But in any event, I understand that we do get sentences of this type. It's just the wrong sentence here, and it's supposed to be individual. Maybe it was not. I misspoke. It was not Maybe. It's supposed to be an individualistic approach, and it was mechanistic here in terms of the factors, and they were overemphasized. Thank you. May it please the Court. My name is Derek Wiseman, and I am here today on behalf of the United States of America. This Court just asked about the 11.8-year average for sex-trafficking defendants. That's cited by the appellant on page 9 of his reply brief. And the appellant directly says, the average sex-trafficking offender gets an 11.8-year sentence. And that's the United States Department of State statistic. But that's not what the United States Department of State statistic actually says. The United States Department of State statistic that's cited on page 9 of the appellant's reply brief says that that 11.8-year term of imprisonment includes sex-trafficking and labor trafficking. So that is not correct. And what? And labor trafficking, Your Honor. So this includes not just sex-trafficking of children, like the conduct that occurred in this case. And that statistic is really far afield from what happened in this case because it includes conduct which Congress has said labor trafficking is not as severe as sex-trafficking because Congress has said that there's no mandatory minimums, like there is in this case, for sex-trafficking. So on that point, that 11.8-year statistic must be ignored and rejected by this Court because it really compares apples and oranges and compares conduct that's less severe to the conduct that's in this case. But back to the start, this Court must affirm this sentence because it is substantively reasonable. But before this Court decides or even considers the substantive reasonableness of the merits of that argument, this Court must first decide whether Appellant Michael Johnson waived his rights to even bring this appeal. And the facts on this point are clear. In a signed and binding written plea agreement, Mr. Johnson agreed to waive his rights to bring the appeal in today's case. And even today, Mr. Johnson has yet to put forward a single plausible interpretation of the written plea agreement that preserves his rights. Therefore, he's effectively conceded that the plain terms of this agreement bar his right to bring this appeal in today's case. Well, they do, but we do have this statement at sentencing, which the defense now claims is a modification, an oral modification of the written agreement. That's exactly right, Your Honor. In fact, that's the only argument that Appellant raises in today's case against appeal waiver. And importantly, that was raised for the very first time in Appellant's reply brief and is therefore not properly before this Court. That was this Court's holding in United States v. Webster and in countless other opinions where this Court has held that an argument raised for the first time in a reply brief is clearly waived and applied here. Mr. Johnson cannot dispute that this is a new argument raised in his reply brief, nor can he dispute that this argument was raised for the first time. Well, he wasn't there at the time it was made, and it depends on when the transcript was available to him. But nothing was said to correct it at the time? No, Your Honor, and we would have made a showing that this argument lacks merit had we been able to fully respond to this, but importantly, on that point, Your Honor, opposing counsel was not counsel in the district court below, but we filed in this case a notice of intent to enforce the appeal waiver provision. It's document number two in the Appellate record, and this Court has clearly held in United States v. Manning just three years ago that the United States should file these notices instead of motions to dismiss based on appeal waiver provisions. And at page 456 in this Court's holding in United States v. Manning, this Court clearly held that these notices must prompt appellants like Mr. Johnson to confront these appeal waiver issues in their opening briefs. And that's the whole point behind these notices, and it's really important to point out, Your Honors, that opposing counsel's own office, the Federal Public Defender's Office for the Central District of Illinois, came up with this notice idea to begin with in United States v. Manning. In that opinion and in that appeal, opposing counsel's own office suggested that the United States file these notices instead of motions to dismiss and admitted at paragraph 16 of document 14 in that appeal in United States v. Manning, they admitted that after these notices are filed, that appellants like Mr. Johnson would be required, and that's their word, not mine, they would be required to address these issues and raise these types of arguments in their opening briefs. But Mr. Johnson failed to do so in this case. And it's clear that he had not just the opportunity, but he had the obligation to do so. And because he failed to do so, this argument is not properly before this Court. Therefore, this Court should look to the binding terms of the written plea agreement. Well, again, I get back to the point. It was not apparent unless you look at the transcript that there was a problem. That is right, Your Honor, but because we filed this notice, that's what this Court held in United States v. Manning, that this notice must prompt appellants to discuss this with their counsel and to address this issue in their opening brief. And because it's not been addressed in their opening brief, it's not properly before this Court. And that's why this Court should look to the binding terms of the written plea agreement, which does bar Mr. Johnson's right to bring this appeal in today's case. And this Court must dismiss this appeal for that reason alone. But even if Mr. Johnson somehow preserved his rights to bring the appeal in today's case, this Court must still affirm the sentence imposed in today's case. This Court has held time and time again that a sentence within the applicable sentencing guideline range is entitled to a presumption of reasonableness. And for cases like this, where the sentence is at the lowest end of the sentencing guideline range, this Court has consistently held that those sentences will almost never be unreasonable. That was this Court's most recent decision in United States v. Lys Kunis. So there is a high hurdle to climb in this case, and Mr. Johnson cannot climb that hurdle. In fact, he has not cited a single case from anywhere throughout the country finding a sentence at the lowest end of the guideline range to be substantively unreasonable. And Mr. Johnson certainly cannot show that the sentence in this case is unreasonable. In this case, where Mr. Johnson fraudulently recruited and exploited children to have sex with strangers for money, where Mr. Johnson had sex with some of those same children himself. Well, as I indicated, although I misstated, it wasn't maybe. There was another case which just came out recently that was the 361th sentence. That's exactly right, Your Honor. And here we're doing... And similar facts. That's exactly right, Your Honor. And here, just like that case, Mr. Johnson had sex with some of those same victims himself and brutally assaulted some of those very same child victims. Mr. Johnson caused unimaginable and potentially irreparable harm to these young girls. And it's important for this Court to remember that we're talking about children here today, children whose bodies were sold, children who were exploited, humiliated, debased, and in some instances brutally beaten by Mr. Johnson. The District Court appropriately recognized the heinous and incredibly reprehensible nature of this crime and also that it was committed by a man with a lengthy criminal history over the past 20 years and reached the abundantly reasonable conclusion that a guideline sentence was warranted. That is not an abuse of discretion. So for that reason and for all other reasons mentioned today, we respectfully request that this Court affirm the sentence imposed by the District Court below. Thank you. Thank you, Counsel. Your Honors, I'm out of time, so I appreciate the extra minute. I'll begin with the government's reliance on United States v. Manning. It's not cited in its brief, so I'm unaware. If the Court wants supplemental briefing from the parties on anything, I'll be happy to provide it. But insofar as the government says the practice is to raise things in a motion and assert the appellate waiver there, I understand that's a disfavored practice and that it's supposed to be handled in the merits brief, which we did. And the government says that we didn't raise this argument in the opening brief. Waiver can be waived. Only when the government relies on waiver need we respond to the waiver argument, which we have. The government then filed a 28-J letter, and we filed a 28-J letter in response. They relied on Webster, and we relied on our distinctions on Webster, but as well as the Adegan case. So I bring all those to this Court's attention. Your Honor, Thompson, yes, 360-month sentence. But there's a very significant factor that looms in Thompson where that victim was a suicidal girl who was not just pimped but actually sold between two truckers. That's a horrible fact that had to be accounted for in Thompson that isn't present here. And so far as the statistics the government says that we lump in child labor as well as trafficking, that's fine. If the child labor cases have lower aggregate sentences, that's fine. But if the number skews downwards relative to grouping sort of disparate types of cases under one heading, all I can do is cite what the statistic is, and then I ask this, how far does it skew down? Is it a 30-year sentence? Is it a 25-year sentence? In this case, the government thought 20 years was a long enough sentence, and they're up now defending a 30-year sentence, and it's on threadbare factual application of sentencing factors by the district court in rejecting a 20-year sentence and giving a sentence that's effectively a life sentence that is 50 percent longer than what the government requested, a full decade. We think that that's substantively unreasonable. We rely again on Jenkins, and that is a case that is pertinent to this analysis. We ask this court to rely on Jenkins as well. I have nothing further to ask that you vacate remand. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.